# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC. | § | |
| | § | |
| v. | § | CASE NO. 2:23-cv-00060-JRG |
| | § | (Lead Case) |
| ALTICE USA, INC., et al. | § | |
| | § | |

| | | |
|---|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC. | § | |
| | § | CASE NO. 2:23-cv-00062-JRG |
| v. | § | (Member Case) |
| | § | |
| COMCAST CABLE COMMUNICATIONS, | § | **FILED UNDER SEAL** |
| LLC, d/b/a XFINITY, et al. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC's (collectively, "Comcast") Motion to Transfer Under 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 34.) In the Motion, Comcast requests that this Court transfer the above-captioned Member Case, Case No. 2:23-cv-00062-JRG, to the Eastern District of Pennsylvania ("EDPA"). (*Id.* at 1.) Having considered the Motion, briefing, and evidence, the Court is of the opinion that the Motion should be **DENIED**.

## I. BACKGROUND

Touchstream filed this suit on February 17, 2023, in the Eastern District of Texas ("EDTX"). (*See* Dkt. No. 1 ("Compl.").)[1] The Complaint alleges that Comcast infringes claim 1 of U.S. Patent No. 8,356,251 (the "'251 Patent"), which generally relates to the remote control of video playback over a network. (Dkt. No. 34 at 1, citing Compl.) Touchstream's infringement

---

[1] All docket number entries in this Opinion refer to those in Lead Case No. 2:23-cv-00060-JRG unless otherwise noted.

allegations target the Xfinity TV Remote and Xfinity Stream mobile applications used with X1 set-top boxes (the "Accused Functionalities"). (*Id.* at 2, citing Compl., ¶¶ 42–43.) On May 12, 2023, Touchstream filed an Amended Complaint asserting two more patents: U.S. Patent Nos. 11,048,751 (the "'751 Patent") and 11,086,934 (the "'934 Patent").[2] (*See* Dkt. No. 55 ("Amended Compl.").) Touchstream asserted those same three patents against Charter Communications, Inc. ("Charter") (Case No. 2:23-cv-00059-JRG) and against Altice USA, Inc. ("Altice") (Case No. 2:23-cv-00060-JRG) in two separate complaints; all three cases were consolidated for pretrial purposes. (*See* Dkt. No. 104 at 12; *see also* Dkt. Nos. 43, 53.) Altice moved to transfer its case to the Eastern District of New York, and the Court recently granted its Motion and transferred that case. (Dkt. Nos. 17; 148.) Comcast filed this Motion on May 8, 2023, and Touchstream's Response was filed in late August 2023 (and briefing was not complete until October) due to extensive venue discovery permitted by this Court upon request of the parties. (*See*, *inter alia*, Dkt. Nos. 50, 52.)

Of note, the parties refer throughout the briefing to a related case in the Western District of Texas, *Touchstream Technologies Inc. v. Google LLC*, 21-cv-00569 (W.D. Tex.) (the "*Google* Case"). In that case, which was tried to a jury, Touchstream asserted the '251 Patent against Google. (*See* Dkt. No. 104 at 7.)

### A. Plaintiff Touchstream Technologies, Inc.

At the time of filing suit, Touchstream was "a New York corporation with its principal place of business in New York, New York." (Compl. ¶ 1.) On April 5, 2023, Touchstream registered as an entity in, and moved its principal place of business to, South Dakota. (Dkt. No. 104 at 2, citing Exs. P02, P03.) As of now, Touchstream maintains its business address at 101 South Reid Street, Suite 307, Sioux Falls, South Dakota 57103. (*Id.*, citing Ex. P03 at 14.)

---

[2] The '251, '751, and '934 Patents are the "Asserted Patents."

## B. Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC

The Comcast Defendants have their principal place of business in Philadelphia. (Dkt. No. 34 at 2, citing Compl. ¶¶ 2–5.) Comcast's headquarters are located at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103, and the Comcast Technology Center is located at 1800 Arch Street, Philadelphia, Pennsylvania 191013. (*Id.* at 2–3.)

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.,* 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating the interest of convenience pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*) The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*)

3

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "*clearly* more convenient" than the venue chosen by the plaintiff. *Id.* (emphasis added). Absent such a showing, however, the plaintiff's choice is to be respected. *Id.*

## III. DISCUSSION

### A. This Case Could Have Been Brought in Pennsylvania

A threshold requirement for § 1404(a) is whether the case could have been brought in the proposed transferee forum. Touchstream does not dispute that this suit could have been brought in EDPA. (*See generally* Dkt. No. 104.)

### B. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

In considering the relative ease of access to sources of proof, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, the Defendant must show that transfer will result in more convenient access to such sources of proof. *See Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017). However, "[t]he location of evidence bears much more strongly on the transfer analysis when…the evidence is physical in nature." *In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Where the vast majority of evidence is electronic, it is often equally accessible in either forum. *See id.*

Comcast argues that this factor favors transfer because its relevant evidence is "either physically located in Philadelphia or stored electronically." (Dkt. No. 34 at 4, citing Dkt. No. 34-

3 ("Cohen Decl."), ¶ 5; Dkt. No. 34-4 ("Ricker Decl."), ¶ 5; Dkt. No. 34-5 ("Villaceran Decl."), ¶ 5; Dkt. No. 34-2 ("Capocasale Decl."), ¶ 4; *see also* Dkt. No. 34 at 10.) This includes relevant electronic documents and source code stored electronically "in or around Philadelphia" which Comcast urges will be less burdensome to produce there.[3] (*Id.*) As for Touchstream evidence, Comcast points out that it has admitted that its "relevant documents…are located in or around New York City, NY or Philadelphia, PA." (*Id.* at 5, citing Ex. 14 at 5.)

Touchstream responds that this factor is neutral, noting that this is a computer software case and pointing to authority that this factor gives minimal weight to the location of digital evidence. (Dkt. No. 104 at 11, citing *Japan Display Inc., v. Tianma Microelectronics Co. Ltd.*, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021).) It argues that many relevant documents are stored in online repositories provided by third parties, and are accessible to Comcast staff throughout the U.S. (*Id.*, citing, *inter alia*, Dkt. 104-24, ¶ 5; Dkt. No. 104-25.) Touchstream then notes that Comcast's source code can be accessed outside of EDPA, as evidenced by Comcast's source code production in other patent cases in Washington, D.C. and in California. (*Id.* at 12, citing Dkt. 104-26, ¶ 42; Dkt. No. 104-35, ¶ 37.)

This factor is neutral. While Comcast argues that the Federal Circuit has found that it was error to conclude this factor was neutral merely because "many of the documents were stored electronically," *Japan Display Inc. v. Tianma Microelectronics Co. Ltd.*, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021) (internal quotations omitted), the Federal Circuit found error where a district court found this factor neutral even though there was *physical evidence* located much nearer to the proposed transferee venue. *In re TS Tech*, 551 at 1321 ("Because all of the *physical evidence*,

---

[3] Comcast asserts that "the Comcast Operating Companies impose restrictions on source code, including by limiting access to specific employees using a Comcast-issued laptop with a Comcast-issued GitHub account." (Dkt. No. 24 at 4, citing Cohen Decl. ¶ 5; Ricker Decl. ¶ 5; Villaceran Decl. ¶ 5.)

including the headrests and the documentary evidence, are far more conveniently located near the [transferee venue], the district court erred in not weighing this factor in favor of transfer.") (emphasis added). Here, Comcast has not represented that there is, in fact, relevant physical evidence in or near Philadelphia.[4] Comcast does not meaningfully contend that it cannot access its relevant electronic documents and source code in the EDTX. Accordingly, this factor is neutral.

### 2. *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel attendance of a nonparty witness at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Comcast argues that EDPA can compel attendance of relevant nonparty witnesses and this Court cannot. (Dkt. No. 34 at 8.) Comcast asserts that Touchstream co-founders—Herb Mitschele, David Strober, Michael Strober, and Jamie Cohen—reside or work within 100 miles of

---

[4] Comcast states only that "[p]hysical documents related to the Accused Functionalities, *to the extent they exist*, would be in Philadelphia." (Dkt. No. 34 at 4) (emphasis added).

Philadelphia. (*Id.* at 5.) It identifies former Touchstream advisor, Jerry Needel, within 100 miles of Philadelphia. (*Id.*) It also points to Sam Borodach, Touchstream's patent prosecution counsel for the '251 Patent, who works in New York City. (*Id.* at 5–6, citing Ex. 18 at 1; Ex. 19 at 1.)

Comcast further argues that the location of some of its prior art witnesses tips the balance of this factor in favor of transfer, asserting that at least some are located near EDPA.[5] (*Id.* at 6.) Another entity, Boxee, released a system for relaying content from a computer to a television screen as early as 2009. (*Id.*, citing Ex. 23.) The founder of Boxee, Avner Ronen, appears to reside in New York City. (*Id.*, citing Ex. 24 at 1.) Of note, Google subpoenaed Boxee for documents in the related *Google* Case with Touchstream. (*Id.*, citing Ex. 25 at 1.) In sum, Comcast contends that this factor heavily favors transfer because multiple former Touchstream personnel, the inventor of the '251 Patent, and Touchstream's patent-prosecution counsel either live or work within 100 miles of Philadelphia.

Touchstream responds that this factor heavily weighs against transfer, arguing that the majority of relevant non-party witnesses are within the subpoena power of this Court rather than of EDPA. (Dkt. No. 104 at 6.) First, Touchstream identifies Rajiv Lulla, a former Touchstream advisor, in Dallas, Texas. (*Id.* at 6–7, citing Ex. P10.) Mr. Lulla was deposed in the related *Google* Case, his deposition was played at trial, his testimony was referenced during closing arguments, and he was on Google's trial witness list (to call live or by deposition). (*Id.*, citing Ex. P38.)

Touchstream also identifies witnesses with knowledge of Touchstream's business and licensing efforts who reside in Texas. (*Id.* at 7.) ███████████████████████████

████████████████████████████████████████████████████████████████████

---

[5] For example, AT&T Labs published a research paper in 2007 describing a test system in Florham Park, NJ that showed "how an IPTV session can be securely controlled remotely and moved between multiple viewing stations." (*Id.* at 6, citing Ex. 20 at 1.) Comcast argues that this Florham Park location and at least two of the paper's authors—David Gibbon and Bin Wei—fall within the EDPA subpoena power. (*Id.*, citing Ex. 20 at 1; Ex. 21 at 1; Ex. 22 at 1.)

witnesses ███████ and ███████ still live in Texas—███████ respectively.[6] (*Id.*, citing P07, P07.) Touchstream also pursued and obtained a licensing deal with Quadriga, a hotel entertainment company, in Texas. (*Id.*, citing Exs. P04, P05.) Michael Bevan, who led sales efforts at Quadriga, lives in McKinney; David Goldstone, a senior executive at Quadriga with knowledge about Touchstream's licensing efforts, lives in Houston. (*Id.*, citing the same.) The resulting Quadriga license was the basis for Touchstream's damages model in the related *Google* case. (*Id.*) Further, Matt Hickey, Touchstream's primary contact during the process of negotiations with AT&T (the "largest deal Touchstream pursued"), is a Texas resident. (*Id.*, citing Ex. P08.)

Touchstream also argues that there are several highly relevant witnesses outside of both courts' subpoena power. First, it points to Derek Johnson in Colorado, who is a ███████ ███████ that met with Touchstream to discuss its technology. (*Id.*, citing Ex. P12.) Touchstream notes that Colorado is much closer in distance to EDTX than to EDPA. (*Id.*, citing, *inter alia*, *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, 2019 WL 3017379, at *4 (E.D. Tex. July 10, 2019).) Touchstream also points to Minh Thai in Chicago, IL, and Gil Beyda in Florida. (*Id.* at 8, citing Exs. P33, P34, P35.) Touchstream argues that have superior knowledge of infringement and willfulness as compared to Comcast's preferred Pennsylvania-based witnesses.[7] (*Id.*, citing Ex. P15 at 89:20–90:3.)

Touchstream contends that Comcast's Motion focuses on irrelevant witnesses with the implication that they may not really be needed for trial. (*Id.*) Touchstream argues that Herb Mitschele, David Strober, and Jamie Cohen are willing witnesses that should not be evaluated

---

[6] Stephen King is a VP at HP who discussed licensing Touchstream's technology and implemented said technology at HP. (Dkt. No. 104 at 4.) Devie Harrison is a vendor manager at HP, who Touchstream asserts managed integration of the Touchstream product. (*Id.*)

[7] Mihn Thai was the product lead for Xfinity Stream and related applications, (*Id.* at 2, citing Exs. P33-P35.) Mr. Beyda was a member of the Comcast Ventures business that Touchstream alleges met with Comcast about its pending patents. (*Id.* at 2, citing Ex. P13.)

under the compulsory attendance factor. (*Id.*, citing Ex. P31, ¶¶ 3–5.) Touchstream also argues

that Michael Strober and Jerry Needel have knowledge cumulative of Mr. Mitschele, and that Mr.

Needel particularly has no knowledge of the invention or reduction to practice of the '251 Patent.

(*Id.*, citing Ex. P31, ¶¶ 7–8.) Unlike Rajiv Lulla, Michael Strober and Jerry Needel were never

deposed in the *Google* Case and were not identified as potential trial witnesses. (*Id.*) Additionally,

Touchstream asserts that both prosecution counsel and prior art witnesses should be given minimal

weight because neither is usually called to testify at trial. (*Id.*) Indeed, neither category of witness

was deposed or testified at trial in the *Google* Case.[8] (*Id.*) Moreover, Touchstream asserts that

although Comcast points to the Florham Park location of AT&T within the subpoena power of the

EDPA, the AT&T headquarters are in Austin, Texas. (*Id.*, citing Ex. P09.)

In reply, Comcast contends that the Court should not credit Touchstream's argument that

David Strober and Herb Mitschele are willing witnesses without a declaration to that effect. (*Id.*)

It also summarily argues that the testimony of Michael Strober and Jerry Needel "cannot be

presumed cumulative." (*Id.* at 1 n.2.) With regard to the third-party witnesses that Touchstream

identified in Texas, Comcast points out that none "were sufficiently important for Touchstream to

include on its trial-witness list against Google." (*Id.* at 2.) Comcast argues that Minh Thai, Derek

Johnson, and Gil Beyda are irrelevant to the analysis of the subpoena power of the respective

courts and that, in any case, there is no basis for Touchstream's assertion that these witnesses have

superior knowledge. (*Id.* at 2 n.3.) Lastly, Comcast argues that the prior-art inventors Touchstream

---

[8] Touchstream argues that, to the extent prior art witnesses are considered relevant by this Court, more prior art
witnesses are within this Court's subpoena power than within that of EDPA. (Dkt. No. 104 at 9–10.) It points to
Comcast's invalidity contentions, which assert U.S. Patent Application Publication No. 2009/0172757 to Aldrey et al.
("Aldrey"), U.S. Patent Application Publication No. 2009/098535 to Klein et al. ("Klein"), and U.S. Patent
Application Publication No. 2010/0162294 to Yin et al. ("Yin"). (*Id.* at 10.) Touchstream notes that all seven Aldrey
inventors and all three Klein inventors reside in Texas. (*Id.* at 10.) One Yin inventor resides in Texas, and the other
five in Massachusetts. (*Id.*)

points to are not inventors of system art for which inventor testimony is probative, unlike Comcast's identified system-related witnesses. (*Id.* at 2.)

In sur-reply, Touchstream notes that Comcast does not dispute that the third-party witnesses in Texas are subject to this Court's subpoena power. (Dkt. No. 115 at 1.) With regard to Minh Thai, Derek Johnson, and Gil Beyda, Touchstream maintains that these witnesses are not cumulative of Comcast's three declarants. (*Id.* at 1–2.) Touchstream's sur-reply focuses only on those three witnesses. (*See id.*)

The Court finds that, on balance, this factor weighs against transfer. As an initial matter, the Court notes that Comcast does not dispute that third-party witnesses in Texas are subject to this Court's subpoena power, nor does Touchstream dispute that any witness identified by Comcast is not subject to EDPA's subpoena power. This is true even though neither party provides much argument regarding the distance of certain witnesses from the respective courts. For the purposes of evaluating this factor, and without more from the parties, the Court assumes that the witnesses identified in Texas are subject to this Court's trial subpoena power by virtue of FRCP 45(c)(1)(B)(ii). The witnesses Touchstream identifies in Texas are in McKinney, Magnolia, Conroe, Houston, and Dallas. These cities are between approximately 140 to 200 miles away from Marshall, and are approximately a 2.0 hour to 3.5 hour drive (or less) away. Comcast does not argue that any witness would suffer "substantial expense" to drive to Marshall for trial, and the Court finds none.[9]

---

[9] This Court's reasoning that Houston is within the subpoena power of EDTX because witnesses in Houston "can easily drive here without substantial expense" supports this result. *See Safoco, Inc. v. KLX Energy Servs., LLC*, 2023 WL 4281243, at *2 (E.D. Tex. June 10, 2023); *see also* Fed. R. Civ. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a trial, hearing, or deposition…within the state where the person resides, is employed, or regularly transacts business in person, if the person…is commanded to attend a trial and would not incur substantial expense.").

Party witnesses are presumed willing witnesses. Touchstream has represented that Herb Mitschele, David Strober, and Jamie Cohen are willing party witnesses, and Comcast cites no authority which requires a declaration. Indeed, David Strober (the inventor of the '251 Patent) and Herb Mitschele (Touchstream's CEO) recently traveled to Texas to testify in the *Google* trial. (*See* Ex. P32.) Based on Touchstream's counsel's written representation in an official filing to the Court on this matter, the Court does not judge these witnesses as "unwilling" witnesses.

Michael Strober and Jerry Needel are both within the subpoena power of EDPA, but the Court is persuaded their knowledge is likely cumulative of Mr. Mitschele's. Comcast specifies no knowledge that these two witnesses might have that Mr. Mitschele would not. Further, the Court notes that neither witness was on the trial witness list in the *Google* Case (or even deposed), while Herb Mitschele and David Strober were.[10] (*See* Ex. P32.) Accordingly, the Court affords little weight to Michael Strober and Jerry Needel under this factor.

Touchstream is correct that patent prosecution counsel and prior art witnesses rarely attend trial and thus, usually receive less weight than other identified witnesses.[11] However, this does not mean that such witnesses receive no weight. The Federal Circuit has held that a categorical rejection of the significance of identified witnesses, untethered to the facts of a particular case, is an abuse of discretion. *In re Netflix Inc.*, 2022 WL 167470, at *3–4 (Fed. Cir. Jan. 19, 2022). In this case, there is no claim of inequitable conduct. The presence of Touchstream's patent prosecution counsel within the subpoena power of EDPA is therefore less significant than if such

---

[10] The Court does not place undue weight on witness attendance in the *Google* Case as compared to this case as each case is unique. However, both parties reference and place weight on what happened in the *Google* trial in the briefing; therefore, the Court takes into consideration the witnesses in that case.

[11] *See AGIS Software Dev. LLC v. HTC Corp.*, 2018 WL 4680558, at *7 n.5 (E.D. Tex. Sept. 28, 2018) (the Court gives little weight to availability of patent prosecuting attorneys since they are "rarely called to trial, especially where…there is no claim of inequitable conduct"); *see also E. Texas Boot Co., LLC v. Nike Inc.*, 2017 WL 2859065, at *4 (E.D. Tex. Feb. 15, 2017) ("It is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal.").

an equitable claim were made. Further, the Court finds that the Comcast prior art witnesses are entitled marginally more weight in the transfer analysis than those identified by Touchstream. First, while AT&T may be headquartered in Dallas, Texas, the identified authors of the relevant article are within the EDPA's subpoena power. Further, Comcast points out that the inventors identified by Touchstream are not inventors of system art for which inventor testimony would be probative, unlike those identified by Comcast. (*See* Dkt. No. 112 at 2.) Touchstream does not respond to this argument, and the Court therefore affords it weight.

Important to the balancing of this factor is the presence of Mr. Rajiv Lulla in Dallas, Texas. Mr. Lulla was a former Touchstream advisor whose deposition was played during the Google trial, whose testimony was referenced during closing arguments, and who was on Google's trial witness list (to call live or by deposition). (*See* Ex. P38.) Given both parties' reliance on what happened in the *Google* Case here, it seems very likely that Mr. Lulla's testimony will be important in this case. If it is transferred to EDPA, that court will not be able to compel him to attend trial.

The Court also credits the presence of the five specific witnesses ███████ Quadriga, ███ ████ who all reside in Texas. Comcast only argues that these witnesses may not be relevant because none were called in the *Google* trial, but fails to connect such argument to the facts of this case. While this Court has explained that it believes it is relevant whether witnesses were called in the *Google* trial,[12] that fact alone does not render witnesses who were not called there negligible here.

Lastly, Touchstream places much emphasis on three former Comcast witnesses in different states, outside of the subpoena power of both courts. However, the Court is unpersuaded that it

---

[12] Touchstream argues that Comcast provides no support for the notion that Touchstream's trial strategy in the *Google* Case diminishes the relevance of those witnesses in this case. (Dkt. No. 115 at 1.) While the Court does take into account the licensing witnesses, it finds Touchstream's argument ironic here considering its reliance on witnesses called during the *Google* trial elsewhere.

should take these witnesses into account under this factor, which evaluates witnesses subject to the subpoena power of either the transferor or the transferee court. Accordingly, the Court does not consider them under this factor.

In sum, each party has identified various persons and entities within the subpoena power of each court. Most witnesses identified in EDPA have questionable and/or limited relevance: Touchstream has shown that Michael Strober and Jerry Needel are cumulative witnesses, and patent prosecution counsel rarely testify at trial.[13] While Comcast has identified prior art witnesses in EDPA that are more likely to be relevant than those identified by Touchstream in Texas, Touchstream has identified five specific witnesses relevant to its licensing and business practices within the subpoena power of EDTX (although it fails to fully their relevance). Additionally, Touchstream has identified Rajiv Lulla within EDTX's subpoena power. The witnesses identified have comparable levels of potential relevance. In sum, the Court finds that this factor is ultimately neutral in the transfer analysis.

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id*. at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as courts applying Fifth Circuit precedent have noted, the convenience of party witnesses is entitled less weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010

---

[13] This is especially true where there are no equitable differences asserted that would make prosecution counsel's testimony needful.

13

WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted in*
A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010).

Comcast argues that this factor weighs in favor of transfer because the EDPA is clearly
more convenient for all known witnesses. (Dkt. No. 34 at 9.) It identifies three Comcast employees
likely to testify on technical matters, all of whom work and live in or near Philadelphia—Evan
Cohen, Todd Ricker, Ramon Villaceran. (*Id.*; *see also* Cohen Decl., ¶ 2; Ricker Decl., ¶ 2;
Villaceran Decl., ¶ 2.) Mr. Cohen is the Senior Director of Software Development & Engineering,
who leads the team responsible for the design and development of the Xfinity TV Remote and
Xfinity Stream applications. (Cohen Decl., ¶3.) Mr. Ricker is also a Senior Director and leads the
team responsible for the design and development of the Xfinity TV Application Programming
Interface with which the Xfinity TV Remote and Xfinity Stream mobile applications communicate.
(Ricker Decl., ¶ 3.) Mr. Villaceran is a Director in the same department, and leads the team
responsible for the design and development of the XRE platform that Comcast's X1 set-top boxes
use. (Villaceran Decl., ¶ 3.) Comcast also identifies Nancy Capocasale, who oversees financial
business operations relating to X1 set-top boxes and the Xfinity TV Remote and Xfinity Stream
mobile applications. (Dkt. No. 104 at 3, citing Capocasale Decl., ¶ 3.)

Comcast also argues that EDPA is more convenient for Touchstream's own witnesses.
Herb Mitschele lives in Pennsylvania and works in New York City (approximately 81 miles from
Philadelphia), and David Strober and several former co-founders work in New York City or
Hoboken, NJ (also approximately 81 miles away). (*Id.* at 4–5, 9, citing Ex. 4 at 20:4-6; Ex. 5 at 1;
Ex. 7 at 2; Ex. 8 at 1.) In sum, Comcast contends that each of the identified witnesses are within
driving distance of Philadelphia, while traveling to Marshall would require a long and inconvenient
journey. (*Id.* at 9, citing Cohen, Villaceran, Ricker, and Capocasale Declarations.)

14

In response, Touchstream argues that its witnesses are willing to travel to Texas for trial, noting that David Strober and Herb Mitschele did just that for the recent *Google* trial. (Dkt. No. 104 at 10.) It also notes that "[t]he fact that a plaintiff could have chosen a venue that would be closer to its employees, attorneys, or sources of proof is not part of a proper venue analysis." (*Id.*, quoting *Enovsys*, 2022 WL 2161028, at *3.)

Touchstream argues that there are multiple Comcast employees with relevant information "only an afternoon drive away from Marshall[,]" pointing to Russel Wiley, Muhammad Nazir, Jerome Butler, and Alex Obregon. (*Id.* at 11.) Russell Wiley is a Java Engineer in Comcast's Software Development and Engineering team, and is located in Houston, Texas; further, Comcast's corporate representative admitted that Mr. Wiley's job requires him to know how the accused product functions. (*Id.* at 3, citing Ex. P14 at 36:16–38:16.) Muhammad Nazir is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ located in Houston, Texas. (*Id.*) Touchstream acknowledges that he does not personally design the product, but argues that his job requires him to understand how the accused product works.[14] (*Id.*, citing Ex. P15 at 37:8–16.) Jerome Butler is a Vice President of Technical Operations and works in Houston, and Alex Obregon is a Vice President of Finance and also works in Houston. (*Id.*, citing Exs. P16–P18.)[15]

Touchstream next points to multiple "key" Comcast witnesses in Centennial, Colorado, which is 935 miles from Marshall but 1,731 miles from Philadelphia. (*Id.* at 3–4, citing Ex. P20.) Comcast revealed during venue discovery that it developed the products at issue in Centennial (*see*

---

[14] Touchstream asserts that "Mr. Nazir's job is to make sure that the accused product functions correctly in production, triaging issues for the development team as he finds them." (*Id.*, citing Ex. P15 at 37:2–18.)

[15] It seems worth noting that driving in and around a congested metropolitan center is very different than driving the same driving the same distance in the non-urban farmlands and small towns of East Texas.

Ex. P19 at 24–25), and Touchstream identifies Joshua Seiden, Shawn Kercher, and Michael Roll as witnesses with information relevant to infringement, the accused product, and/or Comcast's backend infrastructure supporting the accused functionality. (Dkt. No. 104 at 4, citing Ex. P15 at 20:4–5, 42:18–21; P19 at 24–25.) Touchstream also argues that the travel to Marshall that Comcast alleges would "severely disrupt[]" the lives of their witnesses would not actually be burdensome, citing recent travel by Mr. Villaceran and Mr. Cohen. (*Id.*, internal citations omitted.)

Lastly, Touchstream challenges the relevance of Comcast's "cherry-picked" witnesses. (*See id.* at 4, 11.) It concludes that it is unlikely that Nancy Capocasale will be a trial witness and points to testimony that demonstrates Ms. Capocasale has no knowledge of revenue roll-up for the STBs, which will be relevant to damages.[16] (*Id.*, citing Ex. P30 at 70:19–71:9.) Additionally, Touchstream questions the relevance of Mr. Villaceran because the XRE platform he discusses was designed and developed before he came to the group. (*Id.* at 4–5, citing Ex. P14 at 22:19–25; 46:12–14.) Touchstream points to Anne Corby in Colorado as a more likely relevant witness instead because she worked on "X1 Applications Development" and the XRE platform in 2013. (*Id.*, citing Ex. P39 at 1.) It concludes that Comcast's Philadelphia witnesses repeatedly deferred to employees outside of Philadelphia as more knowledgeable about relevant topics. (*Id.*, citing Ex. P15 at 19–20, 23, 27–28, 30, 42, 46–47, 67, 69–72.)

Comcast replies that none of Comcast's declarants deferred to employees outside of Philadelphia about relevant topics. (Dkt. No. 112 at 2.) It explains that Mr. Cohen deferred to Mr. Roll on the location of Comcast facilities in Texas because that has nothing to do with the operation of the accused applications. (*Id.* at 2–3, citing Cohen Decl. ¶¶ 3–4; Ex. P15 at 24:11–14.) Further,

---

[16] Touchstream notes that Ms. Capocasale has never been a trial witness, and that when Comcast last identified her as a potential witness in another lawsuit, it never even told her she was involved in the case. (*Id.*, citing Ex. P30 at 20:11–13; P30 at 31:6–10, P37; 36:10–16.)

16

Comcast clarifies that Ms. Capocasale would need to confer with other employees *in Philadelphia* regarding set-top box revenue. (*Id.*, citing Ex. P15 at 24:11–14.) Lastly, Comcast points out that Mr. Villaceran does not know about the Xfinity TV Remote application because it is the responsibility of Mr. Cohen's team in Philadelphia—however, it represents he knows about the XRE platform used by X1 set-top boxes. (*Id.*, citing Cohen Decl. ¶ 3; Villaceran Decl. ¶ 3.)

In sur-reply, Touchstream argues that Comcast ineffectually attempts to minimize the importance of Russel Wiley and Mr. Nazir, pointing out that Mr. Villaceran admitted that "triaging" the products requires an understanding of how those products function. (Dkt. No. 115 at 3, citing Ex. P14 at 37:21–38:16.) It argues that such testimony demonstrates that EDPA "is not the sole source of relevant evidence in this case." (*Id.*)

The Court finds that this factor weighs in favor of transfer, but only marginally. Touchstream identifies four witnesses in Texas, and Comcast does not demonstrate that those witnesses are irrelevant. However, Comcast has presented declarations by Mr. Cohen, Mr. Villaceran, and Mr. Ricker that their teams in Philadelphia were "responsible for the design and development" and the continued maintenance of the relevant accused instrumentalities. (*See* Cohen Decl., ¶ 3–4; Villaceran Decl., ¶ 3–4; Ricker Decl., ¶ 3–4.) The Court is not persuaded by Touchstream's attempts to undermine the knowledge of these Comcast declarants, nor by its claim that the Comcast employees in Texas have knowledge more relevant to infringement than Comcast's identified witnesses. However, EDTX would be more convenient for the three Comcast employees identified by Touchstream in Centennial, Colorado (closer to Marshall than Philadelphia). Comcast simply argues that these witnesses are not more knowledgeable than the teams in Philadelphia, where work on the Xfinity TV Remote application was transferred after development in Colorado. (*See* Dkt. No. 112 at 3 n.5.) However, the Court considers all potential

17

material and relevant witnesses. *See Alacritech*, 2017 WL 4155236, at *5. Comcast has not shown that Joshua Seiden, Shawn Kersher, and Michael Roll are not material and relevant, nor does Comcast dispute that Centennial is closer to Marshall than to Philadelphia. (*See generally* Dkt. No. 112.)

Touchstream is correct that "[m]erely maintaining its principal place of business in the [EDPA] does not entitle Comcast to remove all lawsuits there." (*See* Dkt. No. 104 at 1.) However, Touchstream identifies none of its own party witnesses in Texas such that transfer to EDPA would constitute shifting the burden from one set of witnesses to another. Nonetheless, the Court does not credit Comcast's argument that EDPA would be more convenient for Touchstream—the Court presumes that the district where the plaintiff files suit is the most convenient forum for plaintiff because it filed there. *See J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008); *see also Enovsys LLC v. T-Mobile USA, Inc.*, 2022 WL 2161028, at *3 (E.D. Tex. June 14, 2022) ("The fact that a plaintiff could have chosen a venue that would be closer to its employees, attorneys, or sources of proof is not part of a proper venue analysis.").

Touchstream has identified four Texas Comcast witnesses and four Colorado Comcast witnesses, each of whom potentially has relevant knowledge. The four Comcast witnesses identified in Philadelphia certainly are relevant. Of note, all witnesses identified are party witnesses. Practically speaking, there are less concerns regarding convenience of witnesses when they are employed by parties—an employer's cooperation in allowing an employee to testify likely diminishes certain aspects of inconvenience to the witness. *In re Hulu, LLC*, 2021 WL 3278194, at *5 (Fed. Cir. 2021). While still entitled weight in the transfer analysis, *see id.*, this factor will not be determinative by itself when only party witnesses are identified and it is not otherwise demonstrated that the transferee forum is clearly more convenient. In summary, this factor weighs

slightly in favor of transfer.

### 4. *Other Practical Problems*

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). This factor addresses such concerns present at the time of the filing of the complaint. *In re Atlassian Corp. PLC*, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021).

Comcast argues that this factor is neutral because no practical problems prevent transfer. (Dkt. No. 34 at 11.) Moreover, it notes that the Federal Circuit has "rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor." (*Id.*, quoting *In re DISH Network, L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021).) While acknowledging that Touchstream filed suit against Charter and Altice the day before or on the same day as against itself, Comcast urges that Touchstream "accuses completely different products of infringement in those cases[.]" (*Id.*) Comcast asserts that "[t]here is no overlap among the accused instrumentalities" in the consolidated cases. (*Id.* at 2, *comparing* Compl. ¶¶ 33–57, with *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23- cv-00059-JRG (E.D. Tex. Feb. 16, 2023), Dkt. No. 1 ¶¶ 30–39 (accusing Spectrum set-top boxes and Spectrum TV mobile apps).)

Comcast additionally notes that Altice has moved to transfer its case to the Eastern District of New York.[17] (*Id.* at 11–12, quoting *Atlassian*, 2021 WL 5292268, at *4.) It concludes that in light of Altice's motion to transfer and the fact that the Charter and Altice cases "involve different defendants and different accused products," this factor could not outweigh any clear benefit of

---

[17] As noted above, Altice's Motion to Transfer was recently granted by Order of the Court (Dkt. No. 148).

transfer under the other factors. (*Id.* at 11–12, quoting *In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021).)

Touchstream responds that this factor actually weighs against transfer in light of the consolidation of this case with two others, with Touchstream asserting the same three patents "against three similar technologies." (Dkt. No. 104 at 12.) It notes in spite of Comcast's argument that these are different accused products, there is "striking similarity among the three, including a 'Watch on TV' feature." (Dkt. No. 115 at 4 n.3, citing Dkt. No. 55 at 17 (Comcast's "Watch on TV" feature); Dkt. No. 53 at 14 (Charter's "Watch on TV" feature); and Dkt. No. 43 at 10 (Altice's "Watch on TV" feature).) Touchstream argues that transfer would waste judicial resources, risk inconsistent rulings, and needlessly duplicate discovery and case development. (Dkt. No. 104 at 12.) Touchstream notes that the *NetScout* Court "held only that it was error for a district court to rely on 'considerations of judicial economy arising after the filing of the lawsuit or the transfer motion[.]'" (Dkt. No. 115 at 4, quoting *NetScout*, 2021 WL 4771756, at *5.)  It therefore argues that because the consolidated actions were filed simultaneously, "the concerns of post-suit venue manipulation underpinning the *NetScout* decision are inapplicable." (*Id.* at 4.) In conclusion, Touchstream asserts that this factor—which it contends is consistently relied on as determinative—strongly disfavors transfer under the principles of judicial efficiency.[18] (*Id.* at 13.)

The Court finds that this factor weighs slightly against transfer, but it is not "determinative" as Touchstream urges. The Federal Circuit has held that "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (internal citations

---

[18] Touchstream also notes that this District has established local patent rules which provide clarity that would not exist were the case transferred to EDPA. (Dkt. No. 104 at 12, citing *Sybase, Inc. v. Vertica Sys., Inc.*, 2008 WL 2387430, at *3 (E.D. Tex. June 9, 2008) (finding that the local rules in this District weigh slightly against transfer to a venue without local patent rules).)

omitted) (emphasis added). Further, "judicial economy may be served even when 'two related cases before the same court may not involve the same defendants and accused products.'" *Id.*, citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). However, as made clear by the *NetScout* Court, the Federal Circuit has "rejected as a general proposition that the *mere* co-pendency of infringement suits…automatically tips the balance in the non-movant's favor."[19] *NetScout*, 2021 WL 4771756, at *5. These principles are not inconsistent.

Judicial economy is clearly implicated by the existence of co-pending consolidated actions involving the same three patents and similar accused technology, even where there are different defendants and different accused products. Touchstream's lawsuits against Comcast and Charter involve many of the same issues. Two Charter defendants have moved to dismiss for lack of venue, but the remaining Charter defendants do not dispute the propriety of venue, meaning *at least* that portion of these consolidated actions will move forward in this venue. (*Id.*, citing Dkt. No. 82.) It serves the interests of judicial economy for the Comcast and Charter actions to remain before the same court, if for no other reason than to avoid the possibility of inconsistent constructions. Consequently, this factor weighs against transfer, but it does so only marginally in light of the transfer of the Altice case and the Federal Circuit's admonition that this factor not automatically tip the scales against transfer.

## C.  Public Interest Factors

### 1.  *Local Interest in Having Localized Interest Decided at Home*

This factor analyzes the "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2015)

---

[19] While the *NetScout* Court did confirm that a district court should not rely on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion, it went a step "[b]eyond that" to find that actions with different defendants and different accused products likely involve significant discovery and evidence. *NetScout*, 2021 WL 4771756, at *5.

(internal citations omitted). Comcast urges that the events giving rise to this suit occurred in EDPA, where it argues the Accused Functionalities were designed, developed, and continue to be maintained. (Dkt. No. 34 at 14; *see also id.* at 3, citing Cohen Decl. ¶ 3; Ricker Decl. ¶ 3; Villaceran Decl. ¶ 3.) It argues that "there are no relevant witnesses or documents in Texas, or any connection between Touchstream and this District." (*Id.* at 14.) Comcast also notes that "[t]his factor is based on the principle that 'jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" (*Id.*, quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).) Therefore, Comcast concludes, this factor favors transfer. (*Id.*)

In response, Touchstream argues that when Comcast's own interests were served, it asked for a jury trial in this very district. (Dkt. No. 104 at 14–15, citing *Comcast Cable Comm'ns, LLC v. Nagra USA, Inc. et al.*, No. 2:17-cv-00664-RWS, Dkt. Nos. 22, 27, 28 (E.D. Tex. 2017) (noting that Comcast opposed defendant's efforts to have that dispute heard in EDPA instead of EDTX).) Touchstream also argues that Comcast has "invest[ed] significant resources to further its goals in Texas." (*Id.* at 15, citing Dkt. No. 104-28 (article entitled "Comcast Plans Major Network Expansion in Texas" dated Feb. 20, 2023).) Touchstream urges that it focused its own "early business-building efforts here, signing numerous deals and meeting with many potential partners." (*Id.*, generally referencing the Opposition Response Background section.) Lastly, Touchstream contends that "Comcast conceived of its infringing product in Colorado, not Pennsylvania." (*Id.*, citing Dkt. No. 104-19 at 25.)

The Court finds that this factor weighs in favor of transfer. Touchstream wrongly focuses on Comcast's "general presence in the [transferor] forum, not on the locus of events that gave rise to the dispute."[20] *See In re Google LLC*, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021). Further,

---

[20] As Comcast points out in its Reply brief, the article Touchstream points to is not relevant to the events giving rise to this case. (*See* Dkt. No. 104-27 (discussing plans to expand broadband Internet network).)

the complaint that Comcast filed in this District was part of an ongoing dispute centered in this District. (*See* Dkt. No. 113-3 at 2.) Comcast's counter-party in that case brought a complaint for patent infringement in this District before Comcast's complaint was filed; Comcast moved to transfer, but withdrew that motion after the counterparty submitted a declaration detailing the nature of its contacts in this District. (*Id.*) In any case, the propriety and convenience of a venue is a case-by-case inquiry.

Touchstream additionally points to a Comcast Interrogatory Response which highlights that the Xfinity TV Remote mobile application was conceived of in Colorado, not Pennsylvania. (Dkt. No. 104-19 at 25.) This does not advance Touchstream's argument that this District has a localized interest in the case that outweighs the localized interest in Pennsylvania, as the conception of the allegedly infringing product occurred in neither forum. For clarity, the Court does not believe this District has no interest in the outcome of this case—Touchstream contends, and the Court does not doubt, that that Comcast customers in this District use the accused functionalities. The Court is simply not persuaded that its interest outweighs that of the EDPA, wherein the design and development of the accused functionality occurred. *See In re Apple Inc.*, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (finding this factor favored transfer when the "research, design, and development of the accused functionality occurred in" the transferee district). Accordingly, this factor weighs against transfer.

### 2.   *Administrative Difficulties Flowing from Court Congestion*

Comcast argues that this factor is neutral, citing authority for the proposition that this is a speculative factor that should not alone outweigh all other factors. (Dkt. No. 34 at 12, citing *In re Apple Inc.*, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021).) It also argues that where a plaintiff is not threatened in the market, "courts discount any 'time-to-trial difference.'" (*Id.* at 12–13,

quoting *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).) It urges that is the case here, noting that Touchstream does not allege (1) that Comcast's purported infringement affects any Touchstream products or operations, nor (2) that it offers any products in the marketplace at all. (*Id.* at 13.) Comcast acknowledges that the median time from filing to trial for civil cases was shorter in this District than in the EDPA, but argues that the difference is not large enough to be material, especially in light of the much lighter caseload per judgeship in EDPA. (*Id.*, citing Dkt. No. 34-32 at 16, 35.)

Touchstream contends that Comcast incorrectly minimizes this factor, arguing that the mere fact that it "does not currently practice its patents" does not remove its interest in promptly resolving this case. (Dkt. No. 104 at 13.) It argues that the potential harm to Touchstream counsels that this factor weigh against transfer. (*Id.*) Further, Touchstream acknowledges that though the difference between the time-to-trial between the two districts is slight. (*Id.* at 14.) However, it notes that this Court has already set a trial date for this case and that discovery is underway. (*Id.*)

The Court finds this factor is neutral in the transfer analysis. The Court notes that there is about a four month difference in time-to-trial between the districts. It also acknowledges that at this point in the case, discovery is well underway here and the trial date is set. However, the Court notes the recent Federal Circuit guidance that this factor does not weigh against transfer where a plaintiff is not "threatened in the market" such that "urgency [might be added] to case resolution." *Google*, 58 F.4th at 1383. Accordingly, this factor is neutral.

### 3. *Familiarity with Governing Law; Conflict of Laws*

The parties concede, and the Court agrees, that these factors are neutral. (*See* Dkt. Nos. 34 at 14–15; 104 at 15.)

## IV.    CONCLUSION

Having considered the parties' arguments and the record, the Court finds that the Motion should be and hereby is **DENIED**. While two of the eight public and private interest factors weigh in favor of transfer, and one weighs against transfer, the remaining balance of factors are neutral. However, the willing witnesses factor (in favor of transfer) is not entitled to undue weight as all identified witnesses are party witnesses. Ultimately, the Court finds that Comcast has not met its significant burden to demonstrate that the Eastern District of Pennsylvania is *clearly* a more convenient venue than the Eastern District of Texas.

Further, the parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So ORDERED and SIGNED this 8th day of March, 2024.**

RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE