# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., | § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:23-CV-00060-JRG |
| v. | § § | (LEAD CASE) |
| ALTICE USA, INC., CEQUEL | § § | |
| COMMUNICATIONS, LLC, CSC | § | |
| HOLDINGS, LLC, and FRIENDSHIP | § | ███████████████ |
| CABLE OF TEXAS, INC., | § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Altice USA, Inc., Cequel Communications, LLC, CSC Holdings, LLC, and Friendship Cable of Texas, Inc.'s (collectively, "Defendants") Opposed Motion to Transfer to the Eastern District of New York (the "Motion"). (Dkt. No. 17.) In the Motion, Altice requests that this Court transfer the above-captioned case to the Eastern District of New York ("EDNY").[1] (*Id.* at 1.) Having considered the Motion, briefing, and evidence, the Court is of the opinion that the Motion should be **GRANTED** on convenience grounds.

## I. BACKGROUND

Touchstream filed this suit on February 17, 2023, in the Eastern District of Texas ("EDTX"). (*See* Dkt. No. 1 ("Compl.").) The Complaint alleges that Altice infringes "at least claim 1" of U.S. Patent No. 8,356,251 (the "'251 Patent"), which generally relates to the remote control of video playback over a network. Touchstream's infringement allegations target Altice's Optimum TV mobile app that "facilitates the controlling of content, such as audio and/or video content, on a content presentation device that loads any one of a plurality of different media

---

[1] The Motion seeks transfer based on allegations of both improper venue and inconvenient venue.

players" (the "Accused Functionality"). (Dkt. No. 17 at 2, citing Compl., ¶¶ 31, 40.) On May 12, 2023, Touchstream filed an Amended Complaint asserting two more patents: U.S. Patent Nos. 11,048,751 (the "'751 Patent") and 11,086,934 (the "'934 Patent").[2] (*See* Dkt. No. 55 ("Amended Compl.").)

Touchstream asserts same three patents against Charter Communications, Inc., Charter Communications Operating, LLC, Time Warner Cable Enterprises LLC, Spectrum Management Holding Company, LLC, Spectrum Gulf Coast, LLC, and Charter Communications, LLC ("CC LLC") (collectively, "Charter") (Case No. 2:23-cv-00059-JRG) and against Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC's (collectively, "Comcast") (Case No. 2:23-cv-00062-JRG) in two separate complaints; all three cases are now consolidated for pretrial management purposes. (*See* Dkt. Nos. 43, 53.) Comcast has moved to transfer its case to the Eastern District of Pennsylvania. (Dkt. No. 32.) Altice filed this Motion on April 17, 2023. (Dkt. No. 34.) However, Touchstream's Response was not filed until late October 2023 (and briefing was not complete until November 2023) due to extensive venue discovery permitted by this Court upon request of the parties.

Of note, the parties refer throughout the briefing to a related case in the Western District of Texas, *Touchstream Technologies Inc. v. Google LLC*, 21-cv-00569 (W.D. Tex.) (the "*Google Case*"). In that case, which was tried to a jury, Touchstream asserted the '251 Patent against Google. (*See* Dkt. No. 104 at 7.)

### A. Plaintiff Touchstream Technologies, Inc.

At the time of filing suit, Touchstream was "a New York corporation with its principal place of business in New York, New York." (Compl., ¶ 1.) On April 5, 2023, Touchstream

---

[2] The '251, '751, and '934 Patents are the "Asserted Patents."

registered as an entity in, and moved its principal place of business to, South Dakota. (Dkt. No. 120 at 2, citing Ex. P13.) As of now, Touchstream maintains its business address at 101 South Reid Street, Suite 307, Sioux Falls, South Dakota 57103. (*Id.*, citing Ex. P03 at 14.)

### B. Defendants Altice USA, Inc., Cequel Communications, LLC, CSC Holdings, LLC, and Friendship Cable of Texas, Inc.

Altice represents that all of the Altice Defendants have their principal place of business in EDNY. (Dkt. No. 17 at 2, citing Ex. 1 ("Aly Decl.") at 2, 43; Compl., ¶¶ 1–5.) Altice USA was established in September 2015. (*Id.* at 1.) After its formation, it acquired Cequel Communications, LLC ("Cequel") (including subsidiary Friendship Cable of Texas, Inc. ("Friendship Cable")) and Cablevision Systems Corporation ("Cablevision") (including subsidiary CSC Holdings, LLC ("CSC")). (*Id.* at 1–2, citing Aly Decl.)

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.,* 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating the interest of convenience pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other

practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*) The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*)

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "*clearly* more convenient" than the venue chosen by the plaintiff. *Id.* (emphasis added). Absent such a showing, however, the plaintiff's choice is to be respected. *Id.*

## III.    DISCUSSION

### A.  The Court Need Not Decide Whether Venue is Proper in EDTX

Venue in a patent infringement case is proper where (1) the defendant resides, or (2) the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Where venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Altice first argues that venue should be transferred to EDNY because venue in EDTX is improper. (Dkt. No. 17 at 8–10.) Touchstream alleges that venue is proper by virtue of Altice committing infringing acts in and having a regular and established place of business in EDTX. (Compl., ¶ 9.) However, Altice contends it performs no step of the '251 claimed method in this District. (Dkt. No. 17 at 8.) The Court finds that transfer to EDNY is proper under § 1404(a) on

4

convenience grounds for the reasons described below; hence, the Court need not address the § 1400(b) assertions.

**B. Venue is Clearly More Convenient in EDNY**

Altice also argues that the Court should transfer to EDNY because it is clearly more convenient than EDTX. (Dkt. No. 17 at 10.) For the reasons explained below, the Court agrees.

### i. This case could have been brought in New York.

A threshold requirement for § 1404(a) is whether the case could have been brought in the transferee forum. Touchstream does not dispute that this suit could have been brought in New York. (*See generally* Dkt. No. 120.)

### ii. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

In considering this factor, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, the Defendant must show that transfer will result in more convenient access to such sources of proof. *See Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017). However, "[t]he location of evidence bears much more strongly on the transfer analysis when…the evidence is physical in nature." *In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Where the vast majority of evidence is electronic, it is often equally accessible in either forum. *See id.*

Altice argues that this factor favors transfer. First, it contends that the technical documentation for its mobile device apps (such as the User Story,[3] design documents, and network

---

[3] Altice explains that the Mobile Development Team (responsible for development and maintenance of the Optimum TV app) uses a User Story document focused on a particular app feature for development, and is a living document stored in an instance of Jira software—a cloud-based ticket management tool hosted on Altice servers near its Bethpage office in Hicksville, NY. (Dkt. No. 17 at 4, citing Watterud Decl., ¶ 34.)

diagrams) is created in EDNY and stored on EDNY servers. (Dkt. No. 17 at 4, 11, citing Watterud Decl., ¶ 35.) Second, Altice represents that the software code underlying the app is stored on EDNY servers—the programming code on Altice servers in Bethpage, New York, and supporting middleware on Altice servers in Hicksville, New York. (*Id.* at 4, 11, citing Watterud Decl., ¶ 36.) Third, Altice points out that the lab where development tests are run on test devices is located in EDNY in Bethpage, noting that there may be physical evidence located at this lab. (*Id.* at 4, 11, citing Watterud Decl., ¶ 37 ("During development, the Mobile Development team tested various features (including the Accused Optimum TV App Remote Feature) on test devices in labs at 1111 Bethpage. I expect the renovated 1111 Bethpage space to continue to include these labs.").) Lastly, Altice notes that any documentation concerning the alleged 2011 meeting between Touchstream and Cablevision (upon which Touchstream bases its willful infringement allegations) would likely be located in EDNY.[4] (*Id.* at 12.)

Further, Touchstream has admitted that its "relevant documents…are located in or around New York City, NY or Philadelphia, PA." (*Id.*, citing Aly Decl. Ex. 25 at 5.) Altice argues that the documentation of Touchstream and other third parties is more accessible from New York: Westchester Community College (where Mr. Strober worked on development of the '251 Patent) is ~35 miles from EDNY; Touchstream's prosecuting attorney is ~10 miles from EDNY; and Boxee prior art witnesses are in or around EDNY. (*Id.*, citing *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (finding Northern District to provide easier access to sources of proof where "four of the six inventors reside in the North District, as do the prosecuting attorneys, relevant

---

[4] The Complaint alleges that Touchstream and Altice met at "an Altice office" in late 2011 (well before the issuance of the '251 Patent). (Dkt. No. 17 at 6, citing Compl., ¶ 26.) Altice points out Altice USA did not even exist in 2011, but any such meeting would be presumably with Cablevision in EDNY, in Bethpage, New York. (*Id.*, citing Aly Decl. Ex. 16 at 5, 29–30.)

former [] employees, and third-party companies that provide certain accused functionality").) In contrast, according to Altice, no relevant sources of proof are located in EDTX. (*Id.*)

Touchstream argues that this factor is neutral. (Dkt. No. 120 at 6.) It first contends that most (if not all) relevant documents will be digital,[5] and this Court should give minimal weight to the location of digital evidence. (*Id.*, citing *Japan Display Inc. v. Tianma Microelectronics Co. Ltd.*, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021).) It notes that Altice's corporate representative acknowledges ████████████████████████████████████████. (*Id.*, citing Ex. P06 at 65:6–66:20.) Touchstream additionally contends that any alleged inconvenience as to Touchstream is not part of the venue analysis. (*Id.*, citing *Enovsys LLC v. T-Mobile USA, Inc.*, 2022 WL 2161028, at *3 (E.D. Tex. June 14, 2022).)

In this case, Altice has identified both digital and potential physical evidence located in EDNY. Touchstream identifies no evidence in or near EDTX, nor does Touchstream address Altice's contention that there is potential physical evidence in EDNY. Therefore, this factor weighs slightly in favor of transfer.[6]

---

[5] Touchstream points out that Altice's own Motion demonstrates that the relevant Altice information it touts is stored on *servers* located in EDNY, which are digital places. (Dkt. No. 120 at 6) (emphasis in original).

[6] Former Congressman Bruce Barton of New York famously said, "When you're through changing, you're through." The analysis of venue issues changed in part for patent cases filed in Texas, Louisiana, and Mississippi in October of 2022 when the Fifth Circuit issued its opinion in *In Re Planned Parenthood Federation of Am. Inc*., 52 F.4th 625 (5th Cir. 2022). Addressing the convenience of access to electronically stored evidence, the Fifth Circuit clarified in a single sentence what patent practitioners had long understood. The Circuit said, "The location of evidence bears much more strongly on the transfer analysis when…the evidence is physical in nature." *Id.* at 630. This necessarily means that the converse is true; i.e., the location of evidence has not much bearing at all on the transfer analysis when the evidence is electronic. There remains a world of difference when the evidence is physical. However, digital documents transferable globally in a matter of seconds with the push of a button create no realistic hinderance to convenient litigation.

As in *Planned Parenthood*, there is some modicum of physical evidence here in addition to the digital majority. For that reason, this factor weighs slightly in favor of transfer. Were this a situation where all the evidence was digital, it is likely such a factor, in truth and fact, would be essentially neutral.

## 2. *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel attendance of a nonparty witness at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Altice contends that this factor favors transfer because numerous third parties are located in or near EDNY. (Dkt. No. 17 at 12.) Altice lists seven buckets of witnesses as within 100 miles of EDNY and subject to that court's subpoena power. (*Id.* at 13.) Altice first identifies Touchstream co-founder and VP for Business Development Jamie Cohen, who Altice notes may be relevant to damages issues relating to Touchstream license negotiations, as a resident of New York. (*Id.*; *see also* Aly Decl. Ex. 9.) Second, Altice identifies New York resident Sam Borodach, the prosecuting attorney for the '251 Patent—it contends he may be "particularly relevant here given that the potential conflict of interest involving his firm's work for Touchstream and Vizbee may warrant inequitable conduct discovery[.]" (*Id.*; *see also infra*.) Third, Altice points to Touchstream advisors

8

Linda Yaccarino and Jerry Needel, noting they may be knowledgeable about market dynamics relating to the alleged invention of the '251 Patent. (*Id.*) Ms. Yaccarino and Mr. Needel also currently reside in New York. (*Id.* at 6, citing Aly Decl. Ex. 12 at 4, Exs. 13–15.)

The fourth group Altice identifies as potentially relevant and within EDNY's subpoena power is Vizbee (a Touchstream competitor). (*Id.* at 13.) Altice points out that Touchstream engaged in numerous discussions with Vizbee in New York. (*Id.* at 7, citing Aly Decl. Ex. 17 at 25, 35, 39.) Mr. Borodach was allegedly involved in some of these discussions and conflict issues arose because Mr. Borodach's firm also represented Vizbee for its patent portfolio. (*Id.* at 7, citing Aly Decl. Ex. 17 at 25, 35, 39.) Altice proposes that Vizbee personnel "may be knowledgeable about Touchstream licensing efforts, market competition, and non-infringing alternatives[.]" (*Id.* at 12.) In the same vein, Altice identifies in the fifth bucket Avner Ronen, who is knowledgeable about the prior art Boxee system. (*Id.*) Boxee is a New York entity that released a system for relaying content from a computer to a TV screen, and Mr. Ronen—located in New York—is Boxee's founder. (*Id.* at 7, citing Aly Decl. Exs. 19–21.) Sixth, Altice identifies as a group "former Cablevision employees," who allegedly met with Touchstream in 2011. (*Id.* at 6, 13.) Seventh, Altice individually names Adam Labelson, "the former Cablevision employee who developed Cablevision's original mobile app and previously had primary responsibility for development of the Optimum TV app." (*Id.* at 13.) Altice represents that Mr. Labelson appears to still reside in New York. (*Id.* at 3, citing Aly Decl. Ex. 4.)

Touchstream responds that this factor actually weighs heavily against transfer because key, non-party witnesses are within EDTX's subpoena power, not EDNY's. (Dkt. No. 120 at 7.) First, it argues that Altice overstates the relevance of the witnesses it identifies. (*Id.*) Touchstream argues Jamie Cohen is a founding member of Touchstream and a willing witness. (*Id.*, citing Ex. P15, ¶

9

5.) Touchstream also contends that Ms. Yaccarino had no relevant interactions with Altice or its subsidiaries, and that Mr. Needel only has knowledge cumulative of Herb Mitschele.[7] (*Id.*, citing Ex. P15, ¶¶ 7–8.) Regarding the Vizbee personnel and Mr. Ronen of Boxee, Touchstream argues that it is highly unlikely that prior art inventors will testify at trial, such that their presence in the transfer analysis should be minimal. (*Id.* at 7–8, citing *E. Texas Boot Co., LLC v. Nike, Inc.*, 2017 WL 2859065, at *4 (E.D. Tex. Feb. 15, 2017).) To the extent prior art witnesses are considered relevant by this Court, Touchstream argues that more prior art witnesses are within this Court's subpoena power than within that of EDPA.[8] (*Id.* at 8.)

Moreover, Touchstream argues that EDNY lacks subpoena power of key non-party witnesses ignored by Altice. (*Id.*) Included in this category, according to Touchstream, are the "former Cablevision employees" (then employed by Suddenlink, predecessor to Cablevision). (*Id.*) According to Touchstream, it met with such employees in St. Louis, Missouri, not Long Island. (*Id.*) It asserts that many of these individuals still reside in St. Louis, with one now in Florida. (*Id.*, citing Ex. P16–P20.) Touchstream also points to ███████████ who resides in ███████ ███████ and who worked on the accused Optimum mobile applications. (*Id.*, citing Ex. P06 at 78:19–79:8.) Touchstream notes that neither Court has subpoena power over these witnesses, but that they are all closer to this District than EDNY. (*Id.* at 8–9, citing *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys.*, 2019 WL 3017379, at *4 (E.D. Tex. July 10, 2019).)

---

[7] Touchstream urges that Mr. Needel has no knowledge regarding the invention or reduction to practice of the Asserted Patents, was never deposed in the *Google* Case, and was never identified as a potential trial witness. (Dkt. No. 120 at 7, ¶ 7.)

[8] Touchstream points to Altice's invalidity contentions, which assert U.S. Patent Application Publication No. 2009/0172757 to Aldrey et al. ("Aldrey"), U.S. Patent Application Publication No. 2009/098535 to Klein et al. ("Klein"), and U.S. Patent Application Publication No. 2010/0162294 to Yin et al. ("Yin"). (Dkt. No. 120 at 8.) It notes that all seven Aldrey inventors and all three Klein inventors reside in Texas. (*Id.*) One Yin inventor resides in Texas, and the other five in Massachusetts. (*Id.*)

Next, Touchstream argues that Altice ignores relevant witnesses in Texas, such as Rajiv Lulla in Dallas, Texas, who worked as an early advisor to Touchstream (and whom Altice has failed to represent it will not call). (*Id.* at 9, citing Ex. P10, P37.) Touchstream also points to: (1) Polsani Vikram in Dallas, who worked at Altice on mobile application development as an Android Engineer from 2016–2018 (*id.*, citing Ex. P22), and (2) Harish Polusani, who resides in this District and was also an Android Engineer for Altice that worked on Optimum and Altice One (*id.*, citing Ex. P23). Also in Texas and relevant to the case, Touchstream argues, are entities and witnesses knowledgeable about Touchstream's business and licensing deals: ██████████████████ in Houston, ████████ in Texas,[9] and ████████ in Texas, amongst others.[10] (*Id.*)

Lastly, Touchstream argues that venue discovery ████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ (*Id.*, citing Ex. ████████) Touchstream has served a Rule 45 subpoena to Sagemcom USA ("Sagemcom") in this case (*see* Ex. P25), and argues that because ████████████████████████████████████████, compulsory attendance of this third-party should be given much weight. (*Id.* at 9–10, citing Ex. P07.)

The Court finds that this factor is neutral. As an initial matter, the Court notes that Altice does not dispute that third-party witnesses in Texas are subject to this Court's subpoena power, nor does Touchstream dispute that witnesses identified by Altice are not subject to EDNY's subpoena power. This is true even though there is little argument regarding the distance of certain

---

[9] The ████████ license Touchstream obtained was the basis for Touchstream's damages model in the *Google* Case. (Dkt. No. 120 at 10.)

[10] Touchstream points out that it "████████████████████████████████████ with the ████████ and that relevant ████ witnesses ████████████████ still live in Texas— respectively. (*Id.*, citing Ex. P10, P11.) It additionally notes that ████████████ who resides in Texas, was Touchstream's ████████████████████ (*Id.*, Ex. P26.) Lastly, it identifies ████████████████████, residing in McKinney, Texas and Houston, Texas, respectively. (*Id.*, citing Ex. P07, P08.)

witnesses from the respective courts. For the purposes of evaluating this factor, then, the Court assumes that the witnesses identified in Texas are subject to this Court's trial subpoena power by virtue of FRCP 45(c)(1)(B)(ii). The witnesses identified in Texas are in McKinney, Magnolia, Conroe, Houston, and Dallas. These cities are between approximately 140 to 200 miles away from Marshall, and are approximately a 3.5 hour drive (or less) away. Altice does not argue that any witness would suffer "substantial expense" to drive to Marshall for trial, and the Court finds none.[11]

Party witnesses are presumed willing witnesses. Touchstream has represented that Jamie Cohen is a willing party witnesses, and Altice cites no authority which requires a declaration to that effect for the Court to give such a statement credit. Based on Touchstream's counsel's written representation in an official filing to the Court on this matter, supported by a declaration from Touchstream's CEO that Mr. Cohen is a willing witness (*see* Ex. P15, ¶ 5), the Court evaluates him as such.

Both Linda Yaccarino and Jerry Needel are within the subpoena power of EDNY. Touchstream argues that these witnesses are not relevant, pointing to a declaration by Mr. Mitschele that the relevant knowledge of Jerry Needel is cumulative of his own knowledge, and arguing that Ms. Yaccarino had no relevant interactions with Altice or its subsidiaries. However, Altice specified that they may be knowledgeable about market dynamics relating to the alleged

---

[11] This Court's reasoning that Houston is within the subpoena power of EDTX because witnesses in Houston "can easily drive here without substantial expense" supports this result. *See Safoco, Inc. v. KLX Energy Servs., LLC*, 2023 WL 4281243, at *2 (E.D. Tex. June 10, 2023); *see also* Fed. R. Civ. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a trial, hearing, or deposition…within the state where the person resides, is employed, or regularly transacts business in person, if the person…is commanded to attend a trial and would not incur substantial expense.").

invention of the '251 Patent. Given this potential relevance, the Court affords some weight to the presence of these witnesses in EDNY.[12]

Further, Touchstream is correct that patent prosecution counsel and prior art witnesses rarely attend trial and thus, often receive less weight than other identified witnesses.[13] However, this does not mean that such witnesses receive no weight. The Federal Circuit has held that a categorical rejection of the significance of identified witnesses, untethered to the facts of a particular case, is an abuse of discretion. *In re Netflix Inc.*, 2022 WL 167470, at *3–4 (Fed. Cir. Jan. 19, 2022) (the district court's categorical refusal to give no weight to patent prosecution and prior art witnesses was an abuse of discretion). While there is no inequitable conduct claim in this case, Altice notes that Sam Borodach's conduct during his representation of Touchstream might warrant inequitable conduct discovery. (*See* Dkt. No. 17 at 13.) The Court accordingly affords some weight to the presence of Touchstream's patent prosecution counsel within the subpoena power of EDNY. Further, the Court credits Altice's argument that its own prior art witnesses are entitled more weight in the transfer analysis than those identified by Touchstream. The inventors identified by Touchstream are not inventors of system art for which inventor testimony would be probative, unlike Avner Ronen of Boxee in particular. Vizbee personnel may be similarly relevant, though the Court affords them little weight as none are identified.

---

[12] The Court does note that no such witness was called at trial in the *Google* Case and takes that into its determination of the weight of these witnesses.

[13] *See AGIS Software Dev. LLC v. HTC Corp.*, 2018 WL 4680558, at *7 n.5 (E.D. Tex. Sept. 28, 2018) (the Court gives little weight to availability of patent prosecuting attorneys since they are "rarely called to trial, especially where…there is no claim of inequitable conduct"); *see also E. Texas Boot Co., LLC v. Nike Inc.*, 2017 WL 2859065, at *4 (E.D. Tex. Feb. 15, 2017) ("It is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal.").

Further, the Court affords some weight to the presence of Harish Polusani and Polsani
Vikram within its subpoena power. While Altice urges that these former consultants are irrelevant,
Touchstream points to contrary evidence, and the Court credits potentially relevant witnesses.

Important to the balancing of this factor is the presence of Mr. Rajiv Lulla in Dallas, Texas.
Mr. Lulla was a former Touchstream advisor whose deposition was played during the *Google* trial,
whose testimony was referenced during closing arguments, and who was on Google's trial witness
list (to call live or by deposition). (*See* Ex. P37.) Given both parties' reliance on what happened in
the *Google* Case here, it seems likely to the Court that Mr. Lulla's testimony is relevant in this
case. If it is transferred to EDNY, that Court will not be able to compel him to attend trial.

In addition, Altice's argument that the Court should not take into account the third-party
licensing witnesses that Touchstream identified is weak. Touchstream identified five specific
witnesses across ███████, and █████ that reside in Texas. The only argument Altice makes
as to these witnesses is that they may not be relevant because none were called in the *Google* trial.
Altice fails to identify why such witnesses would not be relevant under the facts of this case. While
this Court has explained that it is taking into account whether witnesses were called in the *Google*
trial, that fact by itself does not make witnesses who were not called negligible here. Touchstream
has identified five witnesses within EDTX's subpoena power relevant to its licensing practices,
and Altice has not identified a concrete reason that such witnesses would not be relevant.

Weighing in favor of EDNY is the presence of former Cablevision employees in EDNY;
in particular, Adam Labelson. Touchstream does not address Adam Labelson in its briefing. Mr.
Labelson was the lead developer for the accused Optimum TV app, undoubtedly has relevant
knowledge, and is within the subpoena power of EDNY. (*See* Watterud Decl., ¶ 33.) Touchstream
instead attempts to emphasize individuals in different states, outside of the subpoena power of both

14

courts. It argues that this District is more convenient than EDNY for former Suddenlink personnel and Raghuram Darapu. However, it fails to adequately explain (or provide authority explaining) why the Court should take these witnesses into account under this factor, which evaluates witnesses subject to the subpoena power of either the transferor or the transferee court. Accordingly, the Court does not consider those witnesses under this factor.

The presence of Sagemcom in Dallas, Texas favors EDTX. Borne out through venue discovery was Sagemcom's role as manufacturer of the STBs necessary for using the accused Optimum TV App. (*See* Ex. P06 at 48:1–12.) Altice's corporate technical witness testified that these STBs ███████████████████.[14] Touchstream has served a Rule 45 subpoena upon Sagemcom in this case. (Ex. P25.) Altice does not dispute that the STBs will play a key role in this case or that it lacks detailed information regarding these STBs. Instead, it argues that Sagemcom is a French company, and asserts that "technical work is conducted in France, not Texas." (Dkt. No. 122 at 3.) However, it fails to demonstrate that such technical work occurs only in France. (*See* Dkt. Nos. 122-3, 122-4.) Touchstream points to evidence that "Sagemcom employs at least research and development personnel, software developers, software engineers, and validations engineers at its Texas office." (Dkt. No. 124 at 3, citing Exs. P47–P48.) Witnesses from what Touchstream represents is Sagemcom's only U.S. office in Dallas, Texas, can be compelled to testify in EDTX (given that there would be no substantial travel expense, as explained *supra*). (*See* Dkt. No. 124 at 3.) Therefore, Sagemcom's presence in Dallas is given weight in the balancing of this factor, though the Court notes again that no specific potential witnesses from Sagemcom have been identified (and this after months of venue discovery).

---

[14] *See* Ex. P07 at 19:6–15 ███████████████████████████████████████
███████████

In sum, each party has identified various persons and entities within the subpoena power of each court. Within the subpoena power of EDNY, most notably, is Adam Labelson. Additionally within EDNY's subpoena power are Linda Yaccarino and Jerry Needel, Sam Borodach, Avner Ronen, and potentially Boxee and/or Vizbee personnel. On the other hand, this Court likely has subpoena power over Rajiv Lulla, Texas employees of Sagemcom, Harish Polusani and Polsani Vikram, and the five individuals identified with knowledge relevant to Touchstream's licensing and business practices. The witnesses identified have comparable levels of potential relevance. Accordingly, the Court finds that this factor is neutral in the transfer analysis.

### 3.  Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc*., 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id*. at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as courts applying Fifth Circuit precedent have noted, the convenience of party witnesses is entitled less weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc*., 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted in* A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010).

Altice argues that this factor favors transfer because all of its known potential witnesses, along with Touchstream's admittedly "most important witnesses," are located in or near New York. (Dkt. No. 17 at 13.) In particular, the Altice Mobile Development and Product Teams and

16

team leads are located in Bethpage in the EDNY. (*Id.*) The Mobile Development group includes Jennifer Watterud and her team, who are responsible for development and maintenance of the accused app, and are also knowledgeable about consumer demand for app features. (*Id.* at 3–4, citing Watterud Decl., ¶¶ 14-15, 32.) The Altice Product Team is a team managed by five personnel based in or around Bethpage. (*Id.*, citing Watterud Decl., ¶¶ 19, 34.) The Product Team is responsible for initially creating the User Story. (*Id.*, citing the same.) Altice argues that travel each way between Bethpage and the EDTX would cover approximately 1,500 miles and at least 5-6 hours of flight time, plus two hours of travel to and from airports. (*Id.* at 13, citing Aly Decl. Ex. 26.)

With regard to Touchstream witnesses, Altice points out that Touchstream has admitted that its "most important witnesses" are co-founder and named inventor David Strober and CEO Herb Mitschele. (*Id.*, citing Aly Decl. Ex. 8 at 20:4–6; Aly Decl. Ex. 25 at 11.) Mr. Strober is located in New York, and Mr. Mitschele is either in Hoboken, NJ (6 miles from EDNY vs. 1,450 miles from EDTX) or Newtown, PA (~80 miles from EDNY vs. 1,480 miles from EDTX). (*Id.* at 13–14, citing Aly Decl. Ex. 8 at 20:4–6; Aly Decl. Ex. 27–30.)

Touchstream responds that this factor is neutral. First, Touchstream points out that Mr. Mitschele and Mr. Strober are willing party witnesses, and that Touchstream chose its own venue, such that the convenience of Touchstream's own witnesses is not properly taken into account. (Dkt. No. 120 at 11, citing *Enovsys*, 2022 WL 2161028, at *3 n.3 (defendants "cannot rely on the inconvenience of a plaintiff or its witnesses to support its motion to transfer venue").) Regarding Altice's Mobile Development and Products Teams, Touchstream argues that these eleven employees likely have cumulative knowledge given that they are on the same teams. (*Id.*)

Touchstream makes two arguments to explain why these employees do not have relevant knowledge. First, it argues that none of these team members are responsible for ███████████ ███████████████████ they are only responsible for ██████████████████ ████ (*Id.*, citing Ex. ████████████████.) Here, Touchstream notes that the Mobile Development team is not the team that works on the applications for the Altice Set Top Box. (*Id.*) Second, it argues that these witnesses do not have knowledge about Altice's network infrastructure, which Touchstream now argues is a "█████████████████████" (*Id.*, citing Ex. ████████████) For support, Touchstream only points out that "Altice has already disputed the term 'server system' in its network." (*Id.* at 11–12.) Touchstream points to Chris Townsend, Ed Sekula, Jeff Nagy, Dirk Olson, and Jody Clark in Texas as Altice employees with such knowledge. (*Id.* at 11, citing Exs. P07 at 136:10-16; P30, P31, P32, P33.) It notes that Altice's organizational chart demonstrated ███████████████████████████ such that this factor should be neutral. (*Id.* at 12, citing Ex. P06 at 72:18-73:1; 79:20-80:4.)

In reply, Altice urges that Touchstream fails to demonstrate the relevance of the Texas-based Altice witnesses it identified. (Dkt. No. 122 at 4.) Touchstream does not identify any specific issue implicated by Altice's "network infrastructure" other than referring generically to the disputed "server" limitation. However, Altice points out, Touchstream alleged elsewhere in its Opposition that the STB itself, rather than "network infrastructure," is the "server." (*Id.*, citing Dkt. No. 120 at 4.) Altice also points out that Touchstream does not provide any citation or evidence that these witnesses identified have cumulative knowledge. (*Id.* at 5.) Altice argues that the purported relevance of the STBs was not mentioned in Touchstream's pleadings, but that the development team for Altice One STB is based in New York in any event. (*Id.*, citing Ex. 7 at 6:19–8:7,16:4–17:23.)

In sur-reply, Touchstream points out that Altice representative John Markowski named Chris Townsend as a person with relevant knowledge in this case. (Dkt. No. 124 at 4, citing Dkt. No. 120-8 at 136:10–16.) Touchstream also attempts to argue that Altice's argument is shifting, pointing out Altice first argued there was no server, but now admits there is at least one server, but conflates that server with its network infrastructure. (*Id.*, citing Dkt. No. 122 at 4.)

The Court finds that this factor weighs in favor of transfer. As an initial matter, the Court does not credit Altice's argument that EDNY would be more convenient for Touchstream—the Court presumes that the district where the plaintiff files suit is the most convenient forum for plaintiff because it filed there. *See J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008); *see also Enovsys LLC v. T-Mobile USA, Inc.*, 2022 WL 2161028, at *3 (E.D. Tex. June 14, 2022) ("The fact that a plaintiff could have chosen a venue that would be closer to its employees, attorneys, or sources of proof is not part of a proper venue analysis."). However, where a plaintiff sues in a venue that is not its home forum, that choice of forum is entitled less deference.[15] *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (internal citations omitted).

The Court is not persuaded by Touchstream's relevance challenges to Altice's identified willing witnesses. Altice has submitted a declaration stating the names of the individuals on the Mobile Development and Product Teams, and representing that those individuals have relevant knowledge to this suit. (Watterud Decl., ¶¶ 12–21.) These witnesses are in New York, and though they are party witnesses not afforded as much weight as willing non-party witnesses, they are still entitled weight in the transfer analysis. *See In re Hulu, LLC*, 2021 WL 3278194, at *5 (Fed. Cir.

---

[15] Here, Touchstream was a New York entity until April 5, 2023—a mere two weeks before the instant Motion was filed, and a little under two months after the suit was filed, Touchstream registered in and moved its principal place of business to South Dakota. (*See* Dkt. No. 120 at 2.) The Court is unsurprised that trial in EDNY would not be burdensome for the two most important Touchstream witnesses.

2021) ("Although an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience…, it hardly eliminates the inconvenience."). Touchstream's attempt to switch focus onto Altice witnesses in Texas is unavailing. Even taking Touchstream's argument as true that network infrastructure will be relevant to this case, Touchstream identifies by name five witnesses, supporting its claim that four of them have relevant knowledge only by reference to LinkedIn pages. (*See* Dkt. No. 120 at 11, citing Exs. P30–P33.) Touchstream also notes that Chris Townsend was identified as an "Altice employee in Texas doing network engineering" during the venue discovery deposition of Mr. Markowski, which Touchstream argues conveys relevance. (*See id.*)

Even assuming that knowledge of Altice's network infrastructure is relevant to this case, Touchstream has not demonstrated that its identified witnesses have relevant knowledge apart from Chris Townsend. Further, Touchstream does not appear to argue that the Altice individuals identified in EDNY have no relevance at all—instead, it attempts to point to other witnesses in Texas and argue that this factor is neutral. Indeed, Touchstream provides no explanation of how any of the "eleven other individuals" in Texas aside from those it named have relevant knowledge in this case. The Court is not persuaded. Altice has demonstrated that the vast majority of relevant willing witnesses reside in and around EDNY, and the Court finds that this factor favors transfer.

### 4. *Other Practical Problems*

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). This factor addresses such concerns present at the time of the filing of the complaint. *In re Atlassian Corp. PLC*, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021).

Altice argues that there are no other practical considerations here as the Motion was filed as the instant case had just begun. (Dkt. No. 17 at 14.) Further, it notes that there has been no substantive prior litigation in this District regarding the '251 Patent—two prior litigations concerning this patent were in the Southern District of New York and Western District of Texas. (*Id.*) It also argues that the "mere co-pendency of infringement suits in a particular district" does not "automatically tip[] the balance in the non-movant's favor." (Dkt. No. 122 at 5, citing *In re DISH Network L.L.C.*, 2021 WL 4911981, at *3–4 (Fed. Cir. 2021).)

In response, Touchstream argues that Altice ignores the two co-pending cases involving the same asserted patents that this Court consolidated for pretrial proceedings. (Dkt. No. 120 at 12, citing, *inter alia*, *Ecofactor, Inc. v. Resideo Techs., Inc.*, 2022 WL 13973997 at *8 (W.D. Tex. Oct. 21, 2022) ("Judicial economy favors keeping related cases together in the same court."); *Flygrip, Inc. v. Walmart Inc.*, 2022 WL 2373714, at *7 (W.D. Tex. Jun. 29, 2022) ("Transfer of this case…, while another case involving the same patent proceeds here, would create significant practical difficulties.") Touchstream acknowledges that Altice and Comcast have both moved to transfer, but they have moved to transfer to different venues—EDPA (*see* Dkt. No. 34) and EDNY (*see* Dkt. No. 17). (*Id.* at 12–13.) Further, two Charter defendants have moved to dismiss for lack of venue, but the remaining Charter defendants do not dispute the propriety of venue, meaning at least that portion of these consolidated actions will move forward in this venue. (*Id.*, citing Dkt. No. 82.) Therefore, Touchstream argues that this factor heavily weighs against transfer. (*Id.*)

The Court finds that this factor weighs against transfer, but it is not determinative. The Federal Circuit has held that "the existence of multiple lawsuits involving the *same issues* 'is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (internal citations omitted) (emphasis added).

Further, "judicial economy may be served even when 'two related cases before the same court may not involve the same defendants and accused products.'" *Id.*, citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). However, as made clear by the *NetScout* Court, the Federal Circuit has "rejected as a general proposition that the *mere* co-pendency of infringement suits…*automatically tips the balance* in the non-movant's favor." *NetScout*, 2021 WL 4771756, at *5 (emphasis added). These principles are not inconsistent.

Judicial economy is clearly implicated by the existence of co-pending consolidated actions involving the same three patents and similar accused technology, even where there are different defendants and different accused products. Touchstream's lawsuits against Comcast, Charter, and Altice likely involve many of the same issues. It serves the interests of judicial economy for all three actions to remain before the same court, *at least* to avoid the possibility that the patents are inconsistently construed. However, the Federal Circuit has made clear that these common infringement cases may not "automatically tip[] the balance in the non-movant's favor" where the transfer analysis otherwise reveals that transfer is appropriate. *See id.* ("Any judicial economy considerations would be insufficient to outweigh the clear benefits of transfer[.]"). Therefore, this factor does weigh against transfer; however, it is not accorded undue weight in the analysis in this case.

### iii. Public Interest Factors

#### 1. *Local Interest in Having Localized Interest Decided at Home*

This factor analyzes the "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2015) (internal citations omitted).

Altice argues that this favor strongly favors transfer because this is a dispute between New York businesses, and New York courts have a strong interest in resolving such a dispute. (Dkt. No. 17 at 14.) It points out that Touchstream has promoted its product through events in New York, recruited New York advisors, and engaged New York counsel for its patent prosecution and licensing work. (Dkt. No. 17 at 5–6, 14.) According to Touchstream, the founders chose New York as a home for the company because "the majority of our cofounders were already located in New York, and knew the many benefits of launching a technology startup here" including "a huge pool of talent growing here, an amazing angel and VC community, and tons of startup support, all in a market that moves quickly and is making a name for itself outside of the Valley." (*Id.* at 14, citing Aly Decl. Ex. 6; Compl. ¶ 24 n.4.) Additionally, Altice points out that the named inventor of the '251 Patent developed the invention in 2010-11 when he was working at Westchester Community College in New York, and that the prosecuting attorney for that patent is located in New York. (*Id.* at 5–6, citing Compl., ¶¶ 13–14; Aly Decl. Ex. 7.)

Altice concludes that New York courts have an interest in adjudicating the allegations of infringement from Touchstream against Altice, both New York-centric entities. (*Id.* at 14–15, citing Google, 58 F.4th at 1385 (finding a "particularized connection" to transferee forum where "the patented technology was invented in, and the patents prosecuted from, that forum" and "Google developed the accused products [there]").) It also points out that Touchstream did move its principal place of business to South Dakota shortly after the suit was filed, and notes that the "change was, at best, for tax purposes." (Dkt. No. 122 at 5 n.2.)

Touchstream responds that this factor disfavors transfer, arguing that EDTX has a local interest "in enforcing patents Touchstream spent much of its time attempting to commercialize in this state." (Dkt. No. 120 at 14.) Touchstream points to its business in Texas, noting that it pursued

23

and won major contracts in Texas, including with ██████████████. (*Id.*) It also argues that Altice has significant ties to Texas, noting that ███ of Altice's workforce is in Texas. (*Id.*, citing Ex. P05 at line 1016; Ex. P06 at 81:19–82:19.) It points to a statement by Altice that "Texas has been an important state for our legacy Suddenlink business and remains an important market for Altice USA both in terms of customers and employment." (*Id.*, quoting Ex. P04.)

The Court finds that this factor weighs in favor of transfer. Although the Court recognizes Altice's connection with this state, Altice's generalized presence in Texas is not enough weigh against transfer. *See In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (noting that this factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit.") The connections of these entities and the facts of this case to New York gives the New York courts a particularized interest in the resolution of this case.

### 2. *Administrative Difficulties Flowing from Court Congestion*

Altice concludes this factor is neutral because there are no time-sensitivity concerns involved in this case. (Dkt. No. 17 at 15.) It points out that Touchstream is no longer competing in the marketplace, and that it waited six years after the launch of the accused functionality to file suit. (*Id.*, citing Compl., ¶ 29.) Touchstream points to time-to-trial statistics, pointing out that the average time to trial in EDNY more than triples that of this District. (Dkt. No. 120 at 13, citing Ex. P34.) It notes that EDNY has a slightly higher number of pending cases per judge as well. (*Id.* at 13 n.6.)

The Court finds this factor is neutral in the transfer analysis. There is a significant difference in time-to-trial between these districts. However, this Court is beholden to the recent Federal Circuit guidance that this factor does not weigh against transfer where a plaintiff is not

"threatened in the market" such that "urgency [might be added] to case resolution." *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). There is no dispute that Touchstream is not a competitor in the marketplace. Therefore, despite the great disparity in average time-to-trial between EDTX and EDNY, this factor is neutral.[16]

### 3. Familiarity with Governing Law; Conflict of Laws

The parties concede, and the Court agrees, that these factors are neutral. (*See* Dkt. Nos. 17 at 15; 120 at 14.)

## IV.  CONCLUSION

Having considered the parties' arguments and the record, the Court finds that the Motion should be and hereby is **GRANTED**. The relative ease of access to burdens of proof, cost of attendance of willing witnesses, and local interest factors all weigh in favor of transfer, while only the administrative difficulties and practical considerations factors weigh against transfer, with the balance of the factors being neutral. While the Court finds that the Eastern District of New York ultimately is clearly more convenient a venue than the Eastern District of Texas in this case, it is a relatively close call which bears out the wisdom of permitting the significant venue discovery that has benefitted the Court in reaching this result. Accordingly, the Clerk of Court is **ORDERED** to transfer the above-captioned lead case, Case No. 2:23-cv-00060-JRG, to the Eastern District of New York.

Further, the parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order. However, such Notice of Redaction shall be tendered to the

---

[16] This Court finds it odd to consider the marketplace status of the parties in assessing this factor, which is a public interest factor related to Court congestion. It notes that a faster average time to trial leads to the more efficient resolution of cases, something all litigations can value regardless of market position.

Court for review and shall not be tendered to the Clerk until the Court has approved such redactions.

**So ORDERED and SIGNED this 4th day of March, 2024.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE